IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-1413-JLK-KLM

**MUHAMMED NAZIR AL-CHALATI**,

      Applicant,

v.

**RICK RAEMISCH**, Executive Director, Colorado Department of Corrections,
**JAMES FALK**, Warden, Sterling Corr. Facility, and
**JOHN SUTHERS**, Attorney General of the State of Colorado,

      Respondents.

_____

**OPINION AND ORDER ON APPLICATION FOR WRIT OF HABEAS CORPUS**
_____

**Kane, J.**

On November 1, 2006, Applicant Muhammed Nazir Al-Chalati ("Applicant" or "Defendant") was convicted of two counts of solicitation to commit first degree murder in Adams County District Court, and sentenced to two concurrent twenty year sentences. Doc. 1 at ¶ 1. After exhausting the state court appeals process, *see* Doc. 1 at ¶¶ 2-3, Defendant filed an application for a writ of habeas corpus on May 19, 2014, alleging that his confrontation clause rights were violated and that he received ineffective assistance of counsel at his trial. For the reasons that follow, Defendant's application is **DENIED**.

## Background

In its unpublished opinion on Defendant's direct appeal, *see* Doc. 1-2, the Colorado Court of Appeals ("CCA") recited the following background facts:

1

Defendant and his girlfriend (the victim) had a sometimes violent romantic relationship on and off beginning in 2003. As pertinent here, there were three incidents that resulted in defendant being charged with criminal offenses related to the victim.

In the first incident, which occurred on December 20, 2003, the victim told defendant she no longer wanted to be in a relationship with him. Later that day, defendant used a key to enter the victim's home, without her permission, and demanded she return jewelry he had given her. After refusing, the victim attempted to call 911, but defendant took the telephone from her, removed the batteries, and also took her cell phone. The victim repeatedly asked defendant to leave; he refused. She then attempted to leave the apartment, but defendant would not let her. Defendant also threw the victim against the wall and choked her. The victim was eventually able to leave the apartment. This incident resulted in multiple criminal charges against defendant.

In the second incident, which occurred on July 2, 2004, the victim was at a bar and defendant, who was just outside the bar, repeatedly called her cell phone. He also looked over the fence surrounding the patio of the bar and said he was not going to leave until the victim spoke with him. These actions violated a protection order. Defendant was charged with multiple criminal charges arising out of this incident.

In the third incident, which occurred on September 24, 2004, the victim received several phone calls from defendant, who requested her presence at court the following day. He threatened to break down her door and harm her and her dogs if she did not show. The victim called the police, and, while she was on the phone with them, defendant arrived at her house and yelled at her. This incident resulted in defendant being charged with multiple criminal charges.

In addition, defendant, in the presence of others, threatened to kill the victim.

In August 2005, defendant was detained at an Immigration and Customs Enforcement (ICE) facility pending deportation. Defendant's cellmate, who was an ICE informant, told an ICE agent that defendant had asked if he knew where to buy a gun with a silencer and stated that he wanted to kill the victim. The cellmate was instructed by the ICE agent to play along and tell defendant that he knew someone who would kill the victim. An undercover police officer, acting as a killer for hire, spoke with defendant while he was being held at the ICE facility, attempting to set up

the murder. Defendant met with the undercover officer, and, during a recorded conversation, he showed the officer a picture of the victim. They spoke once more by telephone before defendant was arrested on October 13, 2005 for solicitation of murder, removed from the ICE facility, and taken to a county jail.

At the county jail, defendant attempted to hire his new cellmate to kill the victim. This cellmate also reported the matter to the guards. Defendant told the cellmate where the victim lived and worked, what kind of car she drove, and when she would be working alone. Defendant was charged with a second solicitation for first degree murder.

## **Procedural History**

On November 1, 2006, Defendant was convicted by a jury in Adams County District Court of two counts of solicitation to commit first-degree murder, and was sentenced to two concurrent twenty year sentences. Doc. 1 at ¶ 1. Defendant appealed his conviction and his sentence, and the Colorado Court of Appeals affirmed both in an unpublished decision on June 25, 2009. Doc. 1 at ¶ 2. The Colorado Supreme Court denied certiorari on November 16, 2009. *Id.*; Doc. 1-4.

On March 11, 2010, Defendant filed a motion for reconsideration of his sentence under Colorado Rule of Criminal Procedure 35(b), and that motion was denied on March 17, 2010. *See* Docs. 1-5; 1-6. On February 22, 2011, Defendant filed a motion for a new trial under Colorado Rule of Criminal Procedure 35(c), arguing that his trial counsel had been ineffective, and that motion was denied on September 2, 2011. Doc. 1-8. The CCA affirmed the denial of Defendant's Rule 35(c) motion on February 28, 2013, and the Colorado Supreme Court denied Defendant's petition for a writ of certiorari on May 19, 2014. Doc 1-10; 1-12. Also on May 19, 2014, Mr. Al-Chalati filed the instant

application for a writ of habeas corpus under 28 U.S.C. § 2254. Doc. 1. The case was initially assigned to Judge Babcock.

On September 8, 2014, Judge Babcock found that Defendant's application was timely under 28 U.S.C. § 2244(d) and that Defendant had exhausted his state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A). *See* Doc. 15. Accordingly, Judge Babcock ordered the case drawn to a presiding judge under Local Civil Rule 8.1(c). The case was reassigned to this Court on September 8, 2014, and the defendants filed an Answer on October 16, 2014. *See* Doc. 19. Petitioner sought an extension of time until December 18, 2014 to file a reply brief responding to defendants' Answer, *see* Doc. 20, which was granted, but no reply brief was ever filed.

## Standard of Review

The Antiterrorism and Effective Death Penalty Act (AEDPA) provides the standard to be applied by federal courts reviewing constitutional claims brought by prisoners challenging state convictions. Under the AEDPA, when a state court has adjudicated a claim, a petitioner may obtain federal habeas relief only if the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States" or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." *See* 28 U.S.C. § 2254(d); *Harrington v. Richter*, 562 U.S. 86, 100–04 (2011); *Williams v. Taylor*, 529 U.S. 362, 386 (2000); *Neill v. Gibson*, 278 F.3d 1044, 1050–51 (10th Cir. 2001). "Clearly established Federal law for purposes of § 2254(d)(1)

includes only the holdings, as opposed to the dicta, of [the Supreme Court's] decisions." *White v. Woodall*, 134 S.Ct. 1697, 1702 (2014) (citations omitted).

When a state court applies the correct federal law to deny relief, a federal habeas court may consider only whether the state court applied the federal law in an objectively reasonable manner. *See Bell v. Cone*, 535 U.S. 685, 699 (2002); *Hooper v. Mullin*, 314 F.3d 1162, 1169 (10th Cir. 2002). An unreasonable application by the state courts is "not merely wrong; even 'clear error' will not suffice." *White*, 134 S.Ct. at 1702 (citing *Lockyer v. Andrade*, 538 U.S. 63, 75–76 (2003)). The petitioner "'must show that the state court's ruling . . . was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'" *Id.* (quoting *Richter*, 562 U.S. at 103); *see also Metrish v. Lancaster*, 133 S.Ct. 1781, 1787 (2013).

"When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary." *Richter*, 562 U.S. at 99. Section 2254(d) bars relitigation of claims adjudicated on the merits in state courts and federal courts review these claims under the deferential standard of § 2254(d). *Id.* at 98–100; *Schriro v. Landrigan*, 550 U.S. 465, 473-74 (2007). Further, the "determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## Analysis

Defendant's habeas petition alleges (1) that his Confrontation Clause rights were violated when the trial court denied his motion to compel the translator of certain of Defendant's letters (written in Arabic) to testify; (2) that his right to effective assistance of counsel was violated when trial counsel failed to object to the prosecutor's use of the word "liar" in closing arguments; (3) that his right to effective assistance of counsel was violated by the cumulative effect of several other alleged errors by trial counsel; and (4) that trial counsel's advice that Defendant not testify was ineffective assistance of counsel. I consider each argument in turn.

### 1. Defendant's Confrontation Clause Rights Were Not Violated Because Translator of Defendant's Letters Did Not Testify

At trial, the state introduced translations of two letters written in Arabic by the Defendant. In the first translated letter, Defendant writes to a friend and asks the friend to provide his cell mate with $225. In the second letter, Defendant writes to another acquaintance and explains that he is sending the letter with his cellmate, whom he has authorized to retrieve and sell certain items from Defendant's home. Doc. 1-2 at 10-16. Defendant claims that his Confrontation Clause rights were violated when the trial court refused to compel the testimony of the translator of the letters. Doc. 1 at 16-17. The CCA assumed a Sixth Amendment violation but found it harmless beyond a reasonable doubt because the testimony of the translator would have been cumulative, as there was "an abundance of corroborating evidence on the material points of the translations." Doc. 1-2 at 12-16.

Confrontation Clause errors are subject to a harmless error analysis. *Delaware v. Van Arsdall*, 475 U.S. 673, 684 (1986). In federal habeas cases, this Court reviews *de novo* constitutional errors found to be harmless by a state court to determine whether the error had a "substantial and injurious effect or influence in determining the jury's verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *see Welch v. Workman*, 639 F.3d 980, 992 (10th Cir. 2011); *Littlejohn v. Trammell*, 704 F.3d 817, 844–45 (10th Cir. 2013). "[A] substantial injurious effect exists when the court finds itself in grave doubt about the effect of the error on the jury's verdict." *Bland v. Sirmons*, 459 F.3d 999, 1009 (10th Cir. 2006) (internal quotations omitted).

In determining whether error was harmless in the context of Confrontation Clause violations, the Court considers factors such as the "'importance of the witness' testimony in the prosecution's case, whether the testimony was cumulative, the presence or absence of evidence corroborating or contradicting the testimony of the witness on material points, the extent of cross-examination otherwise permitted, and ... the overall strength of the prosecution's case.'" *Littlejohn*, 704 F.3d at 845 (quoting *Van Arsdall*, 475 U.S. at 684).

In this case, I find that any Confrontation Clause error did not have a "substantial and injurious effect" in determining the jury's verdict. Defendant has not explained how the opportunity to cross-examine the translator could have had <u>any</u> effect on the jury's verdict, let alone a "substantial and injurious" one, because Defendant has not and does not challenge the accuracy of the translations. In addition, as the CCA noted, there was an abundance of evidence corroborating the material points of the translations, *e.g.*,

7

testimony of the recipient of the first letter that Defendant asked him to provide Defendant's cellmate with $225, Doc. 1-2 at 15-16.  Accordingly, Defendant's Confrontation Clause argument fails.

    **2. Defendant's Ineffective Assistance of Counsel Claims**

        **a. Trial Counsel's Failure to Object to Prosecutor's Use of the Word "Liar" Was Not Ineffective Assistance of Counsel**

Defendant asserts that his counsel's failure to object when the prosecutor stated in rebuttal that "it's too bad that even [Defendant's] friend Sami Chawi thinks he's a liar" constituted ineffective assistance of counsel.  Doc. 1 at 21.  The CCA acknowledged that the use of the word "lie" is generally improper, but found that its use in this case was a "single, comparatively innocuous" one.  Doc. 1-10 at 8.  The CCA went on to conclude that given the strength of the case against Defendant, "there is no reasonable probability that, had counsel objected to the single use of the word, the result would have been different."  Doc. 1-10 at 9.

I find that the CCA's decision is not an unreasonable application of *Strickland v. Washington*, 466 U.S. 668 (1984).  The prosecutor did not call Defendant a liar and did not offer any personal opinion, but merely characterized Chawi's testimony regarding the Defendant.  *Compare Wend v. People*, 235 P.3d 1089, 1096 (Colo. 2010) (prosecutor acted improperly in using forms of the word lie in reference to the defendant in part because the word "necessarily reflects the personal opinion of the speaker").  In addition, I agree with the CCA that even if it was ineffective assistance of counsel to fail to object to the prosecutor's use of the word "liar," Defendant has failed to demonstrate a

8

reasonable probability that any such objection would have changed the outcome of the trial.  *See Bland v. Sirmons*, 459 F.3d 999, 1025 (10th Cir. 2006); *Haddock v. Roberts*, No. 13–3038–SAC, 2014 WL 7384927, *11-12 (D. Kan. Dec. 29, 2014).

### b. Defendant's Other Alleged Errors Do Not Constitute Ineffective Assistance of Counsel

Defendant also argues that he was prejudiced by the cumulative effect of several other alleged errors by his counsel.  <u>First</u>, Defendant alleges that his trial counsel was ineffective in failing to call Sammy Chawi, Defendant's friend and recipient of the letter requesting a payment of $225 to Defendant's cellmate, as a defense witness.  Defendant alleges that Chawi, who testified for the prosecution, would have testified that Defendant was not a possessive or controlling person, and genuinely loved the victim.  Doc. 1 at 27.  <u>Second</u>, Defendant alleges that his counsel was ineffective in failing to adequately investigate and impeach the two informants who testified for the prosecution.  In particular, Defendant alleges that Mr. Estrada should have been impeached with certain prior inconsistent statements from his deposition, and that evidence should have been introduced that the telephone number Mr. Revello had for Ms. Woods was not her actual phone number, so that the jury would have concluded that "his entire tale was fabricated along with the fake telephone number."  Doc. 1 at 28-29.  <u>Third</u>, Defendant alleges that his counsel was ineffective in failing to present evidence of Arab and Muslim practices and culture.  Specifically, Mr. Revello testified that Defendant told him he was employed by the Israeli secret service and that he witnessed Defendant praying and feared that Defendant was praying for Ms. Woods' death.  However, Defendant argues that

9

testimony regarding Muslim practices and culture would have made clear that Defendant could never have worked for the Israeli secret service because he is a Syrian national, and that Muslims such as Defendant are required to pray five times a day, thereby "neutralizing" Mr. Revello's testimony.  Doc. 1 at 29-30.

The CCA rejected each of Defendant's arguments.  With respect to the first alleged error, the CCA found that it was "pure speculation" that Chawi would have testified to defendant's good character, given his testimony on direct examination that Defendant was a jealous person, and that there was no basis to conclude that any such testimony would have "neutralized" Chawi's harmful testimony.  Doc. 1-10 at 4.  On the second alleged error, the CCA found that Defendant's claim regarding failure to investigate and impeach the two informants was "conclusory and vague," and that Defendant's trial counsel did in fact conduct extensive and fact-specific cross-examination of the two informants, including impeaching their credibility.  Doc. 1-10 at 5.  Finally, the CCA found that Defendant's counsel had adequately impeached Mr. Revello, and that there was no reasonable probability that, had evidence of Arab and Muslim practices and culture been introduced, the result would have been different. Doc. 1-10 at 6.

With respect to counsel's failure to call Chawi as a defense witness, I find that the CCA did not unreasonably apply *Strickland* in rejecting Defendant's argument.  The decision of which witnesses to call is "quintessentially a matter of strategy for the trial attorney."  *Boyle v. McKune,* 544 F.3d 1132, 1139 (10th Cir. 2008).  In addition, I agree with the CCA that it is purely speculative that Chawi would have testified positively for

Defendant and somehow completely "neutralized" his own harmful testimony. *See U.S. v. Celio*, No. 08–cv–02088, 2011 WL 3799028, *11 (D. Colo. May 20, 2011) ("[C]omplaints of uncalled witnesses are not favored in federal habeas corpus review because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a witness would have stated are largely speculative.").

On Defendant's second claim of error, I likewise find that the CCA did not unreasonably apply *Strickland*. Defendant notes Mr. Estrada's deposition testimony that he would "say anything to stay in the United States and not be deported," and his inconsistent statement in deposition that Defendant "never said to find someone to kill Ms. Woods." Doc. 1 at 28. Defendant also alleges that the telephone number Mr. Revello testified belonged to Ms. Woods was not actually hers, and that Defendant's counsel should have presented admissible testimony of this alleged inconsistency. *Id*. at 28-29. I agree with the CCA that these allegations of ineffective assistance are "conclusory and vague," and do not demonstrate that counsel's performance was deficient. *See DeLozier v. Sirmons*, 531 F.3d 1306, 1325-26 (10th Cir. 2008) (rejecting ineffective assistance claim for failure to "more thoroughly" impeach prosecution witness in part because "counsel's decisions regarding how best to cross-examine witnesses presumptively arise from sound trial strategy"). In addition, Defendant has not demonstrated or even explained how introduction of this evidence would have had any reasonable probability of changing the outcome, especially given that counsel did conduct an "extensive and fact-specific" cross-examination of both Mr. Estrada and Mr.

Revello, and gave a closing argument portraying their testimony as exaggerated and untrustworthy.  Doc. 1-10 at 5-6.

Finally, the CCA did not unreasonably apply *Strickland* in rejecting Defendant's argument that counsel should have introduced evidence of Arab and Muslim practices and culture in order to negate Revello's testimony that Defendant told him he was a member of the Israeli secret service and that he feared that Defendant was praying for Ms. Woods' death.  I agree with the CCA's finding that failure to introduce this evidence in order to negate these small portions of Revello's testimony was not ineffective assistance.  *See DeLozier*, 531 F.3d at 1326.  In addition, I agree with the CCA's conclusion that even if it was error not to introduce such evidence, Defendant has not demonstrated prejudice because such evidence would not have affected the great majority of Revello's testimony and because the other evidence of Defendant's guilt was overwhelming.  *See* Doc. 1-10 at 9-12.

### c. Trial Counsel's Advice to Defendant Not to Testify Was Not Ineffective Assistance

Finally, Defendant alleges that his counsel provided ineffective assistance by advising him not to testify on his own behalf.  Doc. 1 at 30-34.  However, the CCA found, and Defendant concedes (both before the CCA and before this Court), that the trial court advised Defendant that he had the right to testify, even if doing so was contrary to the advice of his attorney, and that Defendant's decision not to testify was made "knowingly, voluntarily, and intentionally."  Doc. 1-10 at 7; Doc. 1 at 31.  Accordingly, I find that Defendant has failed to demonstrate a reasonable probability that in the

absence of his counsel's advice not to testify, he would have testified and the result of the proceeding would have been different. *See Hooks v. Ward*, 184 F.3d 1206, 1218-1220 (10th Cir. 1999); *George v. U.S.*, Civ. No. 09–08226, 2011 WL 587967, *6 (D. Ariz. Jan. 21, 2011).

## Conclusion

For the reasons given above, Defendant's application for a writ of habeas corpus under 28 U.S.C. § 2254 is **DENIED**.

Dated this 2nd day of June, 2015, at Denver, Colorado.

                                        **s/ John L. Kane**
                                        SENIOR U.S. DISTRICT JUDGE